UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/3/2018

JAMES CARR,

                    Plaintiff,

-against-

COUNTY OF SULLIVAN, SULLIVAN COUNTY,
SULLIVAN COUNTY DISTRICT ATTORNEY'S
OFFICE, "JOHN Does 1-4," persons employed by
SULLIVAN COUNTY DISTRICT ATTORNEY'S
OFFICE, TOWN OF FALLSBURG, TOWN OF
FALLSBURG POLICE DEPARTMENT,
DETECTIVE BRENDAN PAVESE, DETECTIVE
TRAVIS HARTMAN, "JOHN DOES 1-4," persons
employed by TOWN OF FALLSBURG POLICE
DEPARTMENT, VILLAGE OF MONTICELLO,
VILLAGE OF MONTICELLO POLICE
DEPARTMENT, POLICE OFFICER MICHAEL G.
DAVIS, "JOHN DOES 1-4," persons employed by
VILLAGE OF MONTICELLO POLICE
DEPARTMENT, TOWN OF LIBERTY, VILLAGE
OF LIBERTY, VILLAGE OF LIBERTY POLICE
DEPARTMENT, SERGEANT STEVEN D'AGATA,
OFFICER J.T. WUTZ, "JOHN DOES 1-4," persons
employed by VILLAGE OF LIBERTY POLICE
DEPARTMENT, and NEW YORK STATE
TROOPER INVESTIGATOR WILLIAM YOUNG,
JR.,

                    Defendants.

16-CV-06850 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff James Carr commenced this action alleging constitutional violations under 42

U.S.C. §§ 1983 and 1985 as well as several state law claims against Sullivan County, Sullivan

County District Attorney's Office, "John Does 1–4," persons employed by Sullivan County

District Attorney's Office (collectively "Sullivan Defendants"), the Town of Fallsburg, Fallsburg

Police Department, Detective Brendan Pavese in his personal and official capacity, Detective

Travis Hartman in his personal and official capacity, "John Does 1–4," persons employed by

Fallsburg Police Department (collectively "Fallsburg Defendants"), the Village of Monticello, Monticello Police Department, "John Does 1–4," persons employed by Monticello Police Department, Sergeant Steven D'Agata in his personal and official capacity, the Town of Liberty, Village of Liberty, Village of Liberty Police Department, Officer J.T. Wutz in his personal and official capacity, Officer Michael G. Davis in his personal and official capacity, "John Does 1–4," persons employed by Village of Liberty Police Department (collectively "Monticello/Liberty Defendants"), and New York State Trooper Investigator William Young, Jr. in his personal and official capacity. (*See* First Amended Complaint ("FAC"), ECF No. 33.)

Presently before the Court are the Sullivan Defendants', Fallsburg Defendants', and Monticello/Liberty Defendants' motions to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 41, 44, 51, 52.) Also before the Court is the United States' motion to be substituted as a Defendant and dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 34.) For the following reasons, the Sullivan, Fallsburg, and Monticello/Liberty Defendants' motions to dismiss are GRANTED. The motion to substitute the United States as a Defendant and dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED as moot.

## I. Background[1]

Following an investigation conducted by Defendants in the Sullivan County area, on or about September 26, 2014, Defendant D'Agata arrested Plaintiff James Carr ("Plaintiff").[2] (FAC ¶¶ 20, 21.) While in police custody, Defendants "jointly and collectively created a written

---

[1] The following facts are taken from the Complaint and are assumed to be true for the purposes of these motions.

[2] Plaintiff does not specifically allege which, if any, of the other Defendants were involved in the investigation or arrest.

confidential informant agreement with Plaintiff."[3] (*Id.* ¶¶ 22, 24.) As part of the agreement Plaintiff made several drug purchases for Defendants which were captured on video by cameras installed on Plaintiff's person and vehicle by the Defendants.[4] (*Id.* ¶¶ 28, 29.) On an unspecified date, and in an unspecified manner, the surveillance videos were "leaked to unauthorized personnel and/or individuals" while allegedly in Defendants' possession, and were somehow posted on Facebook.[5] (*Id.* ¶¶ 31, 32.)

On or about September 16, 2015, Otha Smith, a non-party to this action, approached Plaintiff outside of a bar and allegedly stated "[s]nitches get [s]titches" before slashing Plaintiff in the face, causing Plaintiff to suffer a wound that required sixty sutures. (*Id.* ¶¶ 33, 34.)

## II. Procedural History

Plaintiff commenced the instant action on September 9, 2016. (ECF No. 6.) On March 29, 2017, Brandon Cowart filed a notice of appearance on behalf of the United States of America as an interested party. (ECF No. 32.) On the same day, this Court held a conference in which Plaintiff was granted leave to file an Amended Complaint on or before May 15, 2017, in order to withdraw several of his state law claims. A motion schedule was also set for Defendants' contemplated motions to dismiss. (*See* March 29, 2017 Minute Entry.) Plaintiff filed his Amended Complaint on May 12, 2017 (ECF No. 33). On June 15, 2017, the United States filed a motion to be substituted as a Defendant and dismiss the complaint (ECF No. 59).

---

[3] Plaintiff also fails to specifically allege which Defendants created, or entered into, the confidential informant agreement.

[4] Again, Plaintiff fails to allege, with specificity, which Defendants mounted the surveillance equipment on his vehicle and person.

[5] The Amended Complaint does not allege that a specific Defendant possessed the surveillance footage prior to it leaking. Plaintiff alleges that "upon information and belief" the videos "were in the custody and control of the Defendants" and that "Defendants allowed said videos to be leaked." (Compl. ¶ 31.) The Amended Complaint also fails to mention who posted the video to Facebook, or how long it was on the website.

### III. Legal Standard on Motion to Dismiss

To defeat a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual content pleaded permits a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although legal conclusions can offer a framework for the complaint, "they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, the Court must take all relevant factual allegations as accurate and draw reasonable inferences in the non-moving party's favor, but the Court is not required to "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Nor must the Court credit statements which are merely conclusory or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679.

### IV. Discussion

Plaintiff brings federal claims against all named Defendants, in their official and individual capacities, pursuant to 42 U.S.C. § 1983 under a theory of municipal liability for violations of his substantive due process rights under the Fourteenth Amendment. (*See* FAC ¶¶ 37–53.) Plaintiff also asserts a claim pursuant to 42 U.S.C. § 1985(3) for conspiracy to violate his constitutional rights (*See* FAC ¶¶ 54–63), and 42 U.S.C. § 1986 for "[r]efusing [or] [n]eglecting [to] [p]revent." (*See* FAC ¶¶ 64–75.) The court considers each claim in turn.

## A. 42 U.S.C. § 1983 Claims[6]

Plaintiff brings his section 1983 claims against both the municipal Defendants and the individual Defendants in their official and individual capacity and alleges a violation of substantive due process under a theory of municipal liability. (*See* FAC ¶¶ 37–53.)

Section 1983 does not create substantive rights; "it merely provides remedies for deprivations of rights established elsewhere." *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). Therefore, Plaintiff's 1983 claims against the officers and the municipalities "depend on a single threshold question: did the [Defendants'] actions violate [Plaintiff's] constitutional rights?" *Matican v. City of N.Y.*, 524 F.3d 151, 154 (2d Cir. 2008) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, (1986) (per curiam)). Otherwise, a section 1983 claim against individuals or municipalities necessarily fails. *Id.*

---

[6] To the extent that Plaintiff brings § 1983 claims against the Monticello, Liberty and Fallsburg Police Departments, such claims are dismissed. It is well-settled that departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued. *See Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (dismissing claim against a police department); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) ("Under law of the State of New York, 'a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence' . . . [and is] not amenable to suit." (quoting *Hoisington v. Cty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999))); *Umhey v. Cty. of Orange*, 957 F. Supp. 525, 530–31 (S.D.N.Y. 1997) ("When faced with a similar question regarding the amenability to suit of local police departments, 'the numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not.'" (quoting *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 825 (D.N.J. 1993) (collecting cases))). The § 1983 claims against the Sullivan County District Attorney's Office should also be dismissed for the same reason. *See Allyn v. Rockland Cty.*, No. 12-CV-5022 (VB), 2013 WL 4038602, at *2 (S.D.N.Y. July 30, 2013) (dismissing Plaintiff's claims against the Rockland County District Attorney's Office because it is not a suable entity); *Steed v. Delohery*, No. 96-Civ-2449 (RPP), 1998 WL 440861, at *1 (S.D.N.Y. Aug. 4, 1998) ("The New York County District Attorney's Office is not a suable entity."). Consequently, Plaintiff's 1983 claims against the Sullivan County District Attorney's Office are dismissed.

*1.*     *Municipal Liability*

Defendants argue that Plaintiff failed to establish liability against any of the municipal Defendants, because Plaintiff has not plausibly alleged the existence of an official policy or custom that violates a constitutional right. (*See* Monticello/Liberty Defs. Mot. to Dismiss at 12; Fallsburg Defs. Mot. to Dismiss at 4; Sullivan Defs. Mot to Dismiss at 12.) The Court agrees.

The language of § 1983 makes clear that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." As a result, a municipality "cannot be held liable *solely* because it employs a tortfeasor." *Monell v. Dep't. of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Moreover, it is well-settled that a municipality cannot be held vicariously liable for the actions of its employees, *Barrett v. City of Newburgh*, No. 13-Civ-04118, 2014 WL 1092176, at *2 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 720 F. Appx. 29 (2d Cir. 2017) (summ. order), and that a constitutional violation must exist in order to succeed on a claim for municipal liability. *Blue v. City of New York*, No. 16-CV-9990 (VSB), 2018 WL 2561023, at *11 (S.D.N.Y. June 4, 2018) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). In order to state a claim against a municipality under § 1983, Plaintiff must establish "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91).

Plaintiff can fulfill the "policy or custom" requirement by plausibly alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a

supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Additionally, Plaintiff must establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *See Roe*, 542 F.3d at 37 ("[A] plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." (citing *Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997))).

### a. Policy or Custom[7]

Plaintiff alleges that the County of Sullivan, Town of Fallsburg, Village of Monticello, Town of Liberty, and Village of Liberty all employed the same unconstitutional policies and customs, (FAC ¶¶ 45–47), in that, "the aforesaid customs, policies, procedures, rules or usages of the [municipal Defendants] included but not limited to, right to counsel, right to due process, and not intervening when [law enforcement police officers] violated Plaintiff's rights." (FAC ¶ 46.)

"Although a plaintiff is not required to identify an express rule or regulation to establish a *Monell* claim, proof of 'a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123

---

[7] It is unclear from the Amended Complaint whether Plaintiff is alleging that an official policy existed or that these Defendants employed "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware." *Brandon*, 705 F. Supp. 2d at 276–77. This distinction, however, is immaterial here because, as explained below, Plaintiff fails to allege an underlying constitutional violation. *See infra* Section IV.A.3.

(2d Cir. 1991) (internal quotation marks omitted); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *18 (S.D.N.Y. Mar. 26, 2015) ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). "There are at least two circumstances that courts have expressly identified as constituting a municipal policy: [1] 'where there is an officially promulgated policy as that term is generally understood,' and [2] 'where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken.'" *Gantt v. Ferrara*, No. 15-CV-7661 (KMK), 2017 WL 1192889, at *10 (S.D.N.Y. Mar. 29, 2017) (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)). "A municipal custom, on the other hand, need not receive formal approval by the appropriate decisionmaker, but nonetheless may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* (internal citations and quotation marks omitted).

Plaintiff has not asserted sufficient facts to support a claim for municipal liability under § 1983 against any of the municipal Defendants. The Amended Complaint is rife with conclusory statements regarding the existence of official policy or customs. Plaintiff fails to plausibly allege that an "officially promulgated policy" existed, or that there was "a single act . . . taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken." *Gantt*, 2017 WL 1192889, at *7. Nor does he provide any facts to support a claim that there was a "relevant practice . . . so widespread as to have the force of law." *Id.* Surviving dismissal of a § 1983 claim is not particularly onerous. *See Pitt v. City of*

*New York*, 567 F. Supp. 417, 416 (S.D.N.Y. 1983) (rejecting City's argument that Plaintiffs who bring claims pursuant to § 1983 are required to "plead in detail" the facts giving rise to the alleged constitutional violation). Plaintiff's allegation that all municipal Defendants maintained "customs, policies, procedures, rules or usages . . . includ[ing] but not limited to, right to counsel, right to due process, and not intervening when [law enforcement police officers] violated Plaintiff's rights," (FAC ¶ 46) is insufficient to state a *Monell* claim because it is wholly conclusory and there are no facts to support the allegations. *See Maynard v. City of New York*, No. 13-Civ-3412 (CM), 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013) ("Conclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim."); *see also Ricciuti*, 941 F.2d at 124 ("[O]ur prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory."); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a *Monell* claim where Plaintiffs failed to allege any facts showing that there was an official policy—unspoken or otherwise—that violated the Federal Constitution).[8]

b.  Inadequate Training

Plaintiff also alleges that Defendants' failure to adequately train their employees amounted to deliberate indifference to Plaintiff's constitutional rights by "authoriz[ing], tolerat[ing] and ratif[ying] the misconduct of law enforcement personnel." (FAC ¶ 51.) Plaintiff alleges that Defendants did not "receive and provide proper training and instruction in . . .

---

[8] Given that Plaintiff has not plausibly alleged the existence of an official policy or custom, the claims against the municipal employees in their official capacities are dismissed. *See Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 581, 588 (S.D.N.Y 2014) ("[T]here must be proof of such a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself." (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993))).

[m]aintaining the confidentially [sic] of the identity of confidential informant[s,] [r]ecognizing when the confidentially [sic] of the identity of confidential informants has been compromised[, and] [p]roviding protection and safety for confidential informants whose confidentially [sic] has been compromised." (FAC ¶ 42.)

"[A] claim of inadequate training will trigger municipal liability only where 'the failure to train amounts to deliberate indifference to the rights' of those with whom municipal employees will come into contact." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The deliberate indifference standard is stringent and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The test for liability for a failure to train employees requires a showing that:

> (1) the defendant knows to a moral certainty that her employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Tylena M. v. Heartshare Children's Servs.*, 390 F. Supp. 2d 296, 303 n.3 (S.D.N.Y. 2005) (internal quotation marks omitted) (quoting *Walker*, 974 F.2d at 297–98).

Although Plaintiff can satisfy the first prong in that Defendants know to a moral certainty that their employees will be faced with situations where they are required to secure the identities of confidential informants, Plaintiff fails to satisfy the two remaining requirements. Maintaining the confidentiality of informants does not present a difficult choice of the sort that training or supervision will make less difficult and Plaintiff does not allege a history of Defendants mishandling confidential informant identities. Additionally, there are absolutely no allegations

that Defendants disregarded a known or obvious consequence of their actions. *See Connick*, 563

U.S. at 61. Finally, the fact that Plaintiff has failed to establish a constitutional violation

precludes satisfaction of the third prong of the training analysis. *See infra* Section IV.A.3;

*Matican v. City of New York*, 424 F. Supp. 2d 497, 508 (E.D.N.Y. 2006) (Even assuming that

[Plaintiff] can satisfy the first two prongs . . . his failure to show that the officers violated his

constitutional rights means . . . he cannot demonstrate that lack of training caused the deprivation

of his constitutional rights because no such deprivation occurred in the first place."), *aff'd*, 524

F.3d 151 (2d Cir. 2008).

2. *Personal Involvement*

Plaintiff also fails to establish liability under 42 U.S.C. § 1983 against the municipal

employees in their individual capacity.

 "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated

the Constitution." *Iqbal*, 556 U.S. 662, 676, (2009). "[T]he general doctrine of respondeat

superior does not suffice and a showing of some personal responsibility of the defendant is

required." *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989) (quoting

*Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973)). "To successfully allege Section 1983

liability, a plaintiff must demonstrate "personal involvement and cannot merely rely upon an

individual's position of authority." *Olutosin v. Lee*, No. 14-CV-685, 2016 WL 2899275, at *13

(S.D.N.Y. May 16, 2016) (citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).

A supervisory Defendant's personal involvement may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or

custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to [constitutional rights] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[9]

The Amended Complaint does not plausibly allege how each of the named individuals or John Does were involved in the alleged constitutional deprivation warranting dismissal of the claims against the municipal employees in their individual capacities.[10] *See Mann v. Daniels*, No. 10-CV-7540 (PKC) (THK), 2011 WL 2421285, at *2 (S.D.N.Y. June 9, 2011) (dismissing Eighth Amendment deliberate indifference claim against Defendants where the complaint lacked allegations indicating if or how Defendants were involved in the alleged constitutional deprivation); *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" (quoting *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981))), *aff'd sub nom. Dove v. O'Hare*, 210 F.3d 354 (2d Cir. 2000).

---

[9] Following the Supreme Court's decision in *Iqbal*, courts in this circuit are "divided as to whether the five categories announced in *Colon* may still be used as bases for liability under § 1983." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517 at *6 (S.D.N.Y. Sept. 07, 2017). In *Iqbal*, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, the Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.* at 677. "Nevertheless, even assuming the continuing vitality of all the *Colon* factors," Plaintiff has failed to allege the personal involvement of any of the individual Defendants. *George v. Cty. of Westchester*, No. 14-CV-3632, 2018 WL 3364393, at *5, (S.D.N.Y. July 10, 2018).

[10] Plaintiff alleges that Officer D'Agata was the officer who initially arrested Plaintiff prior to the creation of the confidential informant agreement. (FAC ¶ 21.) However, Plaintiff does not establish how Officer D'Agata was involved in the gathering of the surveillance video or how he was involved in the leak and upload of the surveillance video to Facebook. Therefore, the fact that Officer D'Agata arrested Plaintiff is of no import to the personal involvement analysis.

Plaintiff's Amended Complaint is hardly the model of clarity; it reads as though Defendants acted in unison during the events that gave rise to Plaintiff's claims and fails to specifically allege how each Defendant was personally involved in the alleged constitutional violations. (*See generally* FAC.)[11] As a result, Plaintiff's claims against the municipal employees in their individual capacities are dismissed.

### 3. *Substantive Due Process*

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). The substantive component of due process "protects against government power arbitrarily and oppressively exercised," *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)), and "protects an individual's interest in bodily integrity." *Gantt*, 2017 WL 1192889, at *10 (citing *Pabon v. Wright*, 459 F.3d 241, 253 (2d Cir. 2006)). "To state a substantive due process claim, a plaintiff must allege that . . . the state action that deprived [her] of [a constitutionally protected] interest was oppressive or arbitrary." *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881 (CS), 2012 WL 4477552, at *12 (S.D.N.Y. Sept. 27, 2012) (quoting *JG & PG ex rel. JG III v. Card*, No. 08-Civ-5668 (KMW), 2009 WL 2986640, at *5 (S.D.N.Y. Sept. 17, 2009)). Significantly, the Due Process Clause of the Fourteenth Amendment contains no language requiring "the State to protect the life, liberty, and property of its citizens against invasion by private actors," nor does it confer an "affirmative right to governmental aid, even

---

[11] For example, with regard to the alleged mishandling of the surveillance video, Plaintiff states: "While the surveillance videos were in the custody of Defendants, the Defendants allowed said videos to be leaked . . ." (FAC ¶ 31.) Plaintiff then goes on to allege that "Defendants negligence amounted in that police surveillance video was not protected and secured." (FAC ¶ 32.) Finally, Plaintiff asserts that "Defendants with deliberate indifference, conscientiously failed to secure confidential informant information . . . ." (FAC ¶ 35.)

where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 195–96 (1989).

The Second Circuit has recognized two exceptions to the general principle set forth in *DeShaney*. *See Matican*, 524 F.3d at 155 ("We have recognized two exceptions to this general principle, rooted in the Supreme Court's analysis in *DeShaney*."). First, "in exceptional circumstances[,] a governmental entity may have a constitutional obligation to provide such protection . . . because of a special relationship with an individual." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993) (citing *DeShaney*, 489 U.S. at 195). Second, a constitutional obligation to protect the life, liberty and property of an individual against invasion by private actors may exist if "the governmental entity itself has created or increased the danger to the individual." *Id.* Special relationships and state-created dangers are "separate and distinct theories of liability." *Pena v. DePrisco*, 432 F.3d 98, 109 (2d Cir. 2005). "[The] distinction between these categories of cases suggests that 'special relationship' liability arises from the relationship between the state and a particular victim, whereas 'state created danger' liability arises from the relationship between the state and the private assailant." *Id.* If one of these two exceptions is applicable to Plaintiff's claim, Plaintiff must then "show that the officers' behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Matican*, 524 F.3d at 155 (quoting *Lewis*, 523 U.S. at 848 n.8).

a. Special Relationship

Plaintiff alleges that his entrance into the confidential informant agreement created a special relationship within the meaning of the Fourteenth Amendment between he and the Defendants. (FAC ¶ 23.)

"The special relationship exception requires some form of involuntary custody of the Plaintiff." *Tufaro v. City of New York*, No. 12-CV-7505 (AJN) 2014 WL 4290631, at *3 (S.D.N.Y. Aug. 28, 2014); *see Matican*, 524 F.3d at 154 (noting that involuntary custody is the "linchpin" of any special relationship exception); *Ciccone v. Ryan*, No. 14-CV-1325, 2015 WL 4739981, at *4 (S.D.N.Y. Aug. 7, 2015) ("The special relationship exception arises only in limited situations. '[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself,' a special relationship and an attendant constitutional duty arise." (quoting *DeShaney*, 489 U.S. at 195)).[12] This requirement exists because "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200; *Golian v. N.Y.C. Admin. for Children Servs.*, 282 F. Supp. 3d 718, 728 (S.D.N.Y. 2017) ("The Court of Appeals locates the origins of the special relationship theory in the Supreme Court's observation that 'in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals.'" (quoting *DeShaney*, 489 U.S. at 198)); *see also Youngberg v. Romero*, 457 U.S. 307, 317 (1982) ("When a person is institutionalized—and wholly dependent on the State[,] . . . a duty to provide certain services and care does exist,

---

[12] Moreover, several circuits, including the Second Circuit, have held that "a noncustodial relationship between a confidential informant and police, absent more, is not a special relationship." *Matican*, 524 F.3d at 156; *accord Vélez-Díaz v. Vega-Irizarry*, 421 F.3d 71, 80 (1st Cir. 2005) (holding that no custodial relationship existed where Plaintiff was acting as a confidential informant); *Dykema v. Skoumal*, 261 F.3d 701, 706 (7th Cir. 2001) (holding that no special relationship existed where the Plaintiff knew the dangers of the drug business and nonetheless chose to serve as an informant); *Butera v. District of Columbia*, 235 F.3d 637, 648 (D.C. Cir. 2001) ("In this circuit, the custody exception is narrowly construed: Mere police interaction with or assistance to an individual . . . does not necessarily amount to custody."); *Summar v. Bennett*, 157 F.3d 1054, 1059 (6th Cir. 1998) (holding that no special relationship existed where Plaintiff voluntarily agreed to serve as a confidential informant).

although even then a State necessarily has considerable discretion in determining the nature and scope of its responsibilities."); *Surlock v. Delaney*, No. 5:11-CV-1121, 2016 WL 3200273, at *9 (N.D.N.Y. June 8, 2016) ("A person in non-punitive state custody has several interests protected by due process . . . . Further, when individuals are placed in custody or under the care of the government, sometimes their governmental custodians are charged with affirmative duties, the non-feasance of which may violate the Constitution."). However, "[i]nvoluntary custody for purposes of substantive due process does not require the plaintiff to be in the physical custody of the State, but some form of functional state control over the person is required." *Golian*, 282 F. Supp. 3d at 728.[13]

In this case, Plaintiff fails to demonstrate the existence of a special relationship within the meaning of the Fourteenth Amendment's Due Process Clause. Both the Supreme Court and the Second Circuit have recognized that a constitutionally significant special relationship generally involves some type of custody or restraint on an individual's ability to protect themselves. *See DeShaney*, 489 U.S. at 200 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."). Essentially, "[d]istrict courts in this circuit have deduced from *DeShaney* and *Ying Jing Gan* that there can be no special relationship where such involuntary restraints are not present." *Matican*, 424 F. Supp.

---

[13] *See also Gan*, 996 F.2d at 533 ("Special relationships that have been recognized to give rise to a governmental duty to protect against third-person attacks have included custodial relationships such as . . . the relationship between a social service agency and foster child."); *see also Golian*, 282 F. Supp. 3d at 728 ("[A] parolee and the State share a custodial relationship for purposes of substantive due process because the parolee is in the State's legal custody and 'his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed.'" (quoting *Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005) (per curiam))).

2d at 504.

Here, like in *Matican*, Plaintiff freely entered into the informant agreement with Defendants and was not in custody at the time he was attacked. Defendants did not assume control or custody over Plaintiff nor did they "render[ ] [Plaintiff] unable to care for himself." *Matican*, 524 F.3d at 156 (citing *DeShaney*, 489 U.S. at 201). The fact "[t]hat [Plaintiff] was in custody when he agreed to become a confidential informant is of no moment[, as] he does not allege that he was coerced, and his [time in custody] did not exacerbate his injury." *Id.* Therefore, Plaintiff fails to satisfy the special relationship exception.

b. State-Created Danger

Plaintiff also alleges that Defendants' mishandling of the surveillance video "amounted to a state created danger." (FAC ¶ 32.)

"The state-created danger exception requires some form of affirmative, rather than passive, conduct on the part of a government actor that 'communicates, explicitly or implicitly, official sanction of private violence.'" *Tufaro*, 2014 WL 4290631, at *3 (quoting *Okin v. Vill. of Corwall-on-Hudson Police Dep't*, 577 F.3d 415, 429 (2d Cir. 2009)). "Such communication is, in fact, a necessary prerequisite to condoning such conduct." *Bunn v. City of Poughkeepsie*, No. 10-Civ-2297 (PAE), 2012 WL 1621563, at *5 (S.D.N.Y. May 9, 2012) (internal quotation marks omitted). "Where a government official takes an affirmative act that creates an opportunity for a third party to harm a victim (or increases the risk of such harm), the government official can potentially be liable for damages." *Lombardi v. Whitman*, 485 F.3d 73, 80 (2d Cir. 2007).

The Second Circuit, however, has "imposed state created danger liability with considerable stringency." *Hirsch v. City of New York*, 300 F. Supp. 3d 501, 512 (S.D.N.Y. 2018). "A failure to interfere when misconduct takes place, and no more, is not sufficient to amount to a

state *created* danger." *Pena*, 432 F.3d at 110; *see Matican*, 524 F.3d at 157–58 (holding that officers' failure to take steps to protect Plaintiff was too passive to qualify as a state-created danger, even where officers had promised to protect Plaintiff); *Jackson v. N.Y.C. Dep't of Educ.*, No. 10-Civ-9193 (DLC), 2011 WL 2652577, at *3 (S.D.N.Y. July 7, 2011) (stating the school's failure to discipline student did not constitute a state-created danger); *Scruggs v. Meriden Bd. of Educ.*, No. 03-CV-2224, 2007 WL 2318851, at *12 (D. Conn. Aug. 10, 2007) (collecting cases and noting that the state-created danger exception did not impose duty on Defendants to protect students from bullying even where school knew about the danger); *Matican*, 424 F. Supp. 2d 497 at 505 (noting that "simply failing to intercede or punish misconduct" is insufficient to trigger the state-created danger exception).

There are several factors that courts consider when assessing whether a state-created danger exists, such as:

> (1) "the actor must have acted affirmatively, using his or her authority to create an opportunity that would not otherwise have existed for the third party's acts to occur"; (2) "there must be evidence that the state actor had culpable knowledge of the danger in which he or she was placing the victim"; (3) "there must be evidence that the state actor's conduct caused the injury to the victim, or contributed to it in some material way"; and (4) "there must be evidence that the state actor's conduct was so egregious or outrageous that it is conscience-shocking."

*HB*, 2012 WL 4477552, at *11 (quoting *Santucci v. Newark Valley Sch. Dist.*, No. 3:05-CV-0971, 2005 WL 2739104, at *5 (N.D.N.Y. Oct. 24, 2005)). A violation of the Due Process Clause occurs "where the state actors actually contributed to the vulnerability of the plaintiff, or where the state actors aided and abetted a private party in the deprivation of a plaintiff's civil rights." *Okin*, 577 F.3d at 428 (quoting *Hemphill v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998)).

In the instant action, Plaintiff alleges that Defendants had control of the surveillance videos and "allowed [them] to be leaked to unauthorized personnel and/or individuals," which

resulted in the videos being uploaded to Facebook. (FAC ¶ 31.) This allegation does not

constitute a state-created danger because it does not demonstrate an affirmative act committed by

Defendants. *HB*, 2012 WL 4477552, at *11. Plaintiff merely alleges that Defendants negligence,

without referencing any particular act to any of the individually named Defendant, in

maintaining and safeguarding the surveillance videos "amounted to a state created danger."

(FAC ¶ 32.) As several courts have stated, "negligently inflicted harm is categorically beneath

the threshold of constitutional due process." *Pena*, 432 F.3d at 112 (internal quotation marks

omitted); *Lewis*, 523 U.S. at 849; *Lopez v. City of New York*, F. Supp. 3d 304, 315 (S.D.N.Y.

2016); *Briggs v. Cty. of Monroe*, 293 F. Supp. 3d 379, 390 (W.D.N.Y 2018); *Sutton v. Tompkins

Cty.*, 617 F. Supp. 2d 84, 93 (N.D.N.Y. 2007). There are no allegations that any of the named

Defendants affirmatively used their authority "to create an opportunity that would not otherwise

have existed for the third party's acts to occur," or that the state actors had the requisite "culpable

knowledge of the danger in which he or she was placing the victim." *HB*, 2012 WL 4477552, at

*11. Further, the Amended Complaint does not speak to whether the Defendants were made

aware of the tape being leaked and uploaded to Facebook. Allegations to that effect may have led

to the inference that Defendants possessed the requisite culpable knowledge. Additionally,

Plaintiff does not allege that Defendants "aided and abetted" the private party in invading

Plaintiff's rights, and without knowing how much time passed between the videos allegedly

being uploaded to Facebook and the attack on Plaintiff, it is difficult to draw the inference that

the "state actors actually contributed to the vulnerability" of Plaintiff.[14] *Okin*, 577 F.3d at 428.

Thus, Plaintiff has failed to demonstrate a state-created danger.

---

[14] The only timeline Plaintiff offers is that he entered into the confidential informant agreement
on September 26, 2014 (FAC ¶ 27), and was attacked on September 16, 2015. (FAC ¶ 33.) There
is no mention of when the videos were uploaded to Facebook or how long they remained there.

c. <u>Shocking the Conscience</u>

Plaintiff alleges that Defendants engaged in egregious conduct when they, "with deliberate indifference, conscientiously failed to secure confidential informant information, and expose[d] Plaintiff's surveillance video and image on . . . Facebook." (FAC ¶ 35.)

"[T]he purpose of the Due Process Clause of the Fourteenth Amendment is 'to protect the people from the State, not to ensure that the State protect[s] them from each other.'" *Estate of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 425 (S.D.N.Y. 2017) (quoting *DeShaney*, 489 U.S. at 196). "To state a substantive due process claim, a plaintiff must allege that . . . the state action that deprived [her] of [a constitutionally protected] interest was oppressive or arbitrary." *HB*, 2012 WL 4477552, at *12 (quoting *JG*, 2009 WL 2986640, at *5). "Conduct that is deemed to be arbitrary or oppressive must shock the conscience." *Id.* (internal quotation marks omitted); *see Estate of M.D.*, 241 F. Supp. 3d at 425 ("[S]tate action resulting in bodily harm is not a substantive due process violation unless the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (quoting *Pena*, 432 F.3d at 112)). "The Supreme Court has not clearly defined the parameters of behavior that can be said to shock the conscience." *Briggs*, 293 F. Supp. 3d at 390 (internal quotation marks omitted). What has been established, however, is that "[i]t is insufficient to allege that a state actor failed to protect an individual, even from a known danger of bodily harm or failed to warn that individual of such danger." *Estate of M.D.*, 241 F. Supp. 3d at 425 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125–29 (1992)). Moreover, "conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 834 (citing *Daniels v. Williams*, 474 U.S. 327,

20

331 (1986)). Conversely, "negligently inflicted harm is categorically beneath the threshold of constitutional due process," *Pena*, 432 F.3d at 112 (internal quotation marks omitted) (quoting *Lewis*, 523 U.S. at 849), and "an intermediate level of fault, such as recklessness, is [also] not enough to impose constitutional liability." *Id.* at 113 (internal quotation marks omitted) (quoting *Medeiros v. O'Connell*, 150 F.3d 164, 170 (2d Cir. 1998)).

The Supreme Court, however, has held that deliberate indifference can give rise to liability in situations where state officials had time for reflection prior to acting. *See Pena*, 432 F.3d at 113; *see also Lewis*, 523 U.S. at 851 ("As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical."); *Matican*, 424 F. Supp. 2d at 508 ("[I]n situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to 'shock the conscience.'" (quoting *Rivera v. Rhode Island*, 402 F.3d 27, 36 (1st Cir. 2005))).

To establish conscious-shocking conduct in the context of deliberate indifference, Plaintiff "must establish at least a plausible claim that Defendants were repeatedly and deliberately indifferent to an obvious threat of violence to [Plaintiff]." *HB*, 2012 WL 4477552, at *12 (quoting *Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F. Supp. 2d 753, 770 (S.D.N.Y. 2011)). "[I]n the context of deliberative decision-making, the Second Circuit has recognized that where state actors have been subject to the pull of competing obligations, the courts should be reluctant to impose broad constitutional liability for the government officials, whose decisionmaking might be inhibited by the threat of lawsuits." *Chambers*, 815 F. Supp. 2d at 770. However, "where the alleged behavior of . . . defendants [took place] over an extended period of time and in the face of action that presented an obvious risk of severe consequences and extreme danger, the Second Circuit has found that official inaction can shock the conscience. *Id.*

As outrageous as it may be that the surveillance video of Plaintiff acting as a confidential informant found its way onto Facebook, Plaintiff has failed to plausibly allege that Defendants' conduct shocked the conscience. Although Plaintiff alleges that Defendants acted with deliberate indifference with regard to the security of the tape, he does not allege that the Defendants were "repeatedly and deliberately indifferent to an obvious threat of violence to [Plaintiff]," nor does he provide facts to substantiate such a claim. *HB*, 2012 WL 4477552, at *12. There are also no allegations that the Defendants became aware of the video leakage, had time to deliberate about the potential consequences of said leak, and chose to do nothing about it. Instead, Plaintiff merely alleges that Defendants "conscientiously" failed to secure the video. (FAC ¶ 35.) The Amended Complaint is bereft of factual allegations supporting any claim that rise above gross negligence. Therefore, Plaintiff's § 1983 claims are dismissed because he has failed to plausibly allege that his Fourteenth Amendment right to substantive due process was violated by the Defendants.

### B. 42 U.S.C. § 1985 Conspiracy[15]

Plaintiff's Amended Complaint sets forth a conspiracy claim under 42 U.S.C. § 1985(3). To establish a civil rights conspiracy under Section 1985(3) Plaintiff must allege:

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

---

[15] The Amended Complaint does not indicate which section of 42. U.S.C. § 1985 Plaintiff is asserting his conspiracy claim under. However, Plaintiff specifies that his conspiracy claim is being made under § 1985(3) in a footnote contained in Plaintiff's Memorandum of Law in support of Plaintiff's opposition to the Monticello/Liberty Defendants' motion to dismiss. (*See* Pl. Mem. of Law in Opp. to Monticello/Liberty Defs. Mot. to Dismiss ("Carr Opp. to Monticello") 26 n.1, ECF No. 56.)

*Britt v. Garcia,* 457 F.3d 264, 269 n.4 (2d Cir. 2006); *see* 42 U.S.C. § 1985(3).

The conspiracy must also be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (quoting *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Gleason v. McBride*, 869 F.2d 688, 694–95 (2d Cir. 1989) (outlining the requirements to state a § 1985 claim). There are several constitutionally protected classes under Section 1985 other than race. *See, e.g.*, *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1359 (2d Cir. 1989) (gender); *Keating v. Carey*, 706 F.2d 377, 388 (2d Cir. 1983) (political affiliation). However, the term class means more than "a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Town of W. Hartford v. Operation Rescue*, 991 F.2d 1039, 1046 (2d Cir. 1993).

Further, in order to successfully plead the existence of a conspiracy between Defendants, "a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Conclusory allegations of a conspiracy are insufficient to survive a motion to dismiss. *See Allen v. Antal*, No. 12-Civ-8024, 2014 WL 2526977, at *9 (S.D.N.Y. Mar. 13, 2014) ("Although 'conspiracies are by their very nature secretive operations' that 'may have to be proven by circumstantial, rather than direct, evidence,' conclusory allegations of a conspiracy are insufficient." (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999))), *aff'd*, 665 Fed. Appx. 9 (2d Cir. 2016) (summ. order).

Here, Plaintiff fails to assert a conspiracy claim under § 1985(3). The section of Plaintiff's Amended Complaint labeled "Cause of Action III 42 U.S.C[.] 1985: Conspiracy" is based on Defendants' allegedly negligent safekeeping of the videos depicting Plaintiff as an informant. (FAC ¶¶ 60–62.) The conspiracy claim's fatal flaw, however, is that there is no "factual basis supporting . . . that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb*, 340 F.3d at 110–11. Plaintiff references an agreement between the parties to have Plaintiff become an informant but does not allege the existence of an agreement between Defendants to cause Plaintiff to be "injured in his person or property[ ] or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985.Moreover, Plaintiff does not allege that he is a member of a constitutionally protected class nor does he reference any legal authority supporting the notion that confidential informants are a protected class for constitutional purposes. *See Dolan v. Connolly*, 794 F.3d 290 (2d Cir. 2015) (holding that membership in the Inmate Liaison Committee, did not make Plaintiff a part of a constitutionally protected class); *Terry,* 886 F.2d 1339, 1359 (2d Cir. 1989) (holding that gender constitutes a constitutionally protected class); *Keating,* 706 F.2d 377, 388 (2d Cir. 1983) (holding that political affiliation constitutes a constitutionally protected class)*; see also Hurt v. Smith*, No. 1:09-CV-698, 2010 WL 3034520, at *2 (E.D. Cal. Aug 2, 2010) ("The Court is unaware of, and plaintiff does not cite, legal authority for treating informants as a protected class for constitutional purposes."). Therefore, Plaintiff's § 1985 conspiracy claim is dismissed.

### C. Section 1986 Refusing or Neglecting to Prevent

Although Plaintiff asserts a claim for "refusing or neglecting to prevent" under § 1983, the Court construes that Plaintiff intended to assert this claim pursuant to 42 U.S.C. § 1986. (FAC ¶¶ 64–75.) Section 1986 provides that any "person who, having knowledge that any of the

wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do" shall be liable to the injured party. *See* 42 U.S.C. § 1986; *see also Secard v. Wells Fargo Bank, N.A.*, No CV-15-499 (JS) (ARL), 2015 WL 6442563, at *4 (E.D.N.Y. Sept. 9, 2015) (construing Plaintiff's § 1983 "refusing or neglecting to prevent" claim as brought under § 1986), *report & recommendation adopted*, 2015 WL 6442346 (E.D.N.Y. Oct. 23, 2015). A § 1986 claim "must be predicated on a valid Section 1985 claim and, in the absence of such a predicate claim, must be dismissed." *Cater v. New York*, No. 17-Civ-9032, 2018 WL 3093964, at *7 (S.D.N.Y. June 21, 2018) (quoting *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000)). As discussed above, Plaintiff has failed to state a § 1985 conspiracy claim. *See supra* Section IV.B. Accordingly, Plaintiff's § 1986 claim is dismissed.

### D. State Law Claims

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims because Plaintiff failed to plead sufficient facts regarding his federal claims to permit the Court "to draw the reasonable inference that the [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see* 28 U.S.C. § 1367(c)(3); *see also Sklodowska-Grezak v. Stein*, 236 F. Supp. 3d 805, 810 (S.D.N.Y. 2017) (declining to exercise supplemental jurisdiction over state law claims where federal claims have been dismissed). Consequently, Plaintiff's state law claims are dismissed without prejudice, and to the extent Plaintiff can cognizably plead the same, he can do so in state court.

## E. Motion to Substitute U.S. as Defendant[16]

The United States argues that Plaintiff is bringing a claim against certain Federal

Defendants—Officer Michael Davis, Sergeant Steven D'Agata and State Trooper Investigator

William Young Jr.—under the Federal Torts Claim Act and moves to be substituted as a

Defendant and dismiss the Amended Complaint for lack of subject matter jurisdiction.[17] (*See*

*generally* United States Mot. to Dismiss, ECF No. 59.) The Court, however will not reach the

merits of this motion because the issue is now moot. Plaintiff's federal claims have been

---

[16] In his memorandum of law in opposition to the motion to substitute the United States as a Defendant, Plaintiff suggests that "[t]he Court should construe all allegations that support Plaintiff's claims pursuant to 42 U.S.C. § 1983 as a *Bivens* claim against [Officer Michael Davis, Sergeant Steven D'Agata and State Trooper Investigator William Young Jr.] in their individual capacities." (*See* Pl. Mem. Opp. U.S. Mot. to Sub. at 8.) The Court however, declines to consider this argument, as it is improper to raise arguments for the first time in Plaintiff's reply. *See Flemming v. New York*, No. 06-Civ-15226 (LAP) (HBP), 2013 WL 4831197, at *8 n.11 (S.D.N.Y. Sept. 10, 2013) (declining to consider arguments raised by petitioner in reply papers and subsequent letters to the court); *Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 359 (S.D.N.Y. 2007) ("Arguments first raised in reply memoranda are 'not properly considered.'" (quoting *Int'l Elecs., Inc. v. Media Syndication Glob., Inc.*, No. 02-Civ-4274 (LAK), 2002 WL 1897661, at *3 n.2 (S.D.N.Y. Aug. 17, 2002))).

[17] The Federal Torts Claim Act ("FTCA") allows "civil actions on claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). This remedy "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim." *Id.* § 2679(b)(1). Section 2679 provides that:

> [u]pon certification by the Attorney General that [a] defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

*Id.* § 2679(d)(2). Here, the Acting United States Attorney for the Southern District of New York has certified that Officer Michael Davis, Sergeant Steven D'Agata and State Trooper Investigator William Young Jr. were federal employees acting within the scope of their employment during the alleged incident. (Declaration of Brandon Cowart, Ex. 1.) Plaintiff, however, did not raise a FTCA in his Amended Complaint.

dismissed against all Defendants for failure to state a plausible claim upon which relief can be granted.

## V. Conclusion

For the foregoing reasons the Sullivan, Monticello/Liberty and Fallsburg Defendants' motions to dismiss all federal claims are GRANTED. Plaintiff's Fourteenth Amendment due process claim under 42 U.S.C. § 1983 and conspiracy claim under 42 U.S.C. § 1985(3) are dismissed. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. The motion to substitute the United States as a Defendant is also DENIED as moot.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 41, 44, 51, and 59 and terminate the action.

Dated: August 3, 2018
      White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge